USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/6/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRENCE SCRETCHING,

                Plaintiff,

-against-

DETECTIVE SCHLOSSER, *et al.*,

                Defendants.

---

12 Civ. 8129 (PAE) (JLC)

**REPORT AND RECOMMENDATION**

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Paul A. Engelmayer, United States District Judge:**

*Pro se* Plaintiff Terrence Scretching, currently incarcerated at Mid-State Correctional Facility, has brought this action under 42 U.S.C. § 1983 against Defendants, four officers of the New York City Police Department ("NYPD") and the City of New York, alleging false arrest, malicious prosecution, and excessive force in violation of his constitutional rights. Defendants have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Scretching's claims are without merit because (1) he never challenged the validity of the conviction that resulted from the alleged false arrest and malicious prosecution, and (2) he fails to meet minimum pleading standards as to his excessive force claim. For the reasons set forth below, I recommend that Defendants' motion be granted but that Scretching be given permission to file an amended complaint.

## I. BACKGROUND

### A. Scretching's Allegations

Scretching initiated this action by using the Court's form complaint for *pro se* litigants raising civil rights claims under Section 1983. *See* Complaint dated October 23, 2012 ("Compl.") (Dkt. No. 2). The facts presented here are drawn from that form complaint. At

USDC SDNY
DATE SCANNED 5/6/14

6:30 a.m. on August 23, 2012, "the warrant squad," its members unspecified, came to Scretching's Bronx apartment "looking for an Hispanic person." Compl., at 5.[1] After Scretching and his wife produced identification and their apartment lease, the officers called the 43rd Precinct and then told Scretching that he was "wanted for questioning." *Id.* At the precinct, Defendants Schlosser and Pastor put Scretching in a lineup, after which Pastor showed Scretching a text message that Pastor was writing to Assistant District Attorney ("ADA") Marc Brown stating that Scretching had been "picked out." *Id.* According to the complaint, Brown was the prosecutor on "numerous" cases against Scretching, including one in which Scretching was "out on bail" and others that had been dismissed. *Id.*

The complaint further alleges that on "numerous occasions" over "a stretch of almost 3 years," Schlosser and Pastor, as well as Defendants Garrity and Swanson, all identified as detectives working at the 43rd Precinct, violated his Fourth Amendment rights. *Id.* at 6. Three months prior to Scretching's August 23, 2012 arrest, Garrity and Swanson allegedly "picked [Scretching] up" three times and put him in lineups, released him when he was not identified, and "voided the action from the precinct computer which is illegal." *Id.* at 5. According to Scretching, the 43rd Precinct "has been under fire as of late for such practices and this precinct has an ongoing investigation by the Internal Affairs Department of the [NYPD]." *Id.* at 6.

Finally, Scretching alleges that he was beaten by the four individually named detectives, and that he has "scars on [his] back to prove it!!" *Id.*, ¶ III. The complaint contains no other facts regarding an alleged beating. In compensation for his alleged injuries, including "constant

---

[1] Because Scretching attached several handwritten pages to the form complaint, the Court refers not to the page numbers found on the form itself, but instead either to the page number of the electronic docket entry or the Roman numeral section numbers indicated on the form.

harassment and mental anguish put upon" him and his family, Scretching seeks money damages and the termination of the four detectives' employment. *Id.*, ¶ V.

## B. Procedural History

Scretching filed his complaint on October 26, 2012 and was granted *in forma pauperis* ("IFP") status, allowing him to proceed without prepaying the filing fee. *See* Order dated Nov. 16, 2012 (Dkt. No. 3). In his complaint, Scretching initially named as Defendants the four detectives, the 43rd Precinct, the NYPD, then-New York City Mayor Michael Bloomberg, and ADA Brown. Compl., at 1-3. By order dated December 4, 2012, the Court dismissed the claims against the NYPD, which is an entity that cannot be sued, and instead substituted the City of New York as the appropriate defendant under Rule 21 of the Federal Rules of Civil Procedure. Order (Dkt. No. 8), at 2 (citing N.Y. City Charter ch. 17, § 396). The Court also dismissed all claims against Bloomberg because the complaint failed to state any facts as to his involvement in the alleged constitutional violations. *Id.* at 2-3 (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Finally, claims against ADA Brown were dismissed based on prosecutorial immunity. *Id.* at 3 (citing Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)).

After the Court ordered Scretching to show cause for failing to serve Defendants, Order dated April 17, 2013 (Dkt. No. 9), service was effected by means of the U.S. Marshals Service on July 5, 2013. *See* Process Receipts (Dkt. Nos. 16-19).[2] Defendants answered on September 17, 2013 (Dkt. No. 22). On December 20, 2013, Defendants filed their motion for judgment on the pleadings (Dkt. No. 29), supported by a Memorandum of Law ("Def. Mem.") (Dkt. No. 31), and a Declaration by the Assistant Corporation Counsel representing Defendants ("Horton Decl.") (Dkt. No. 30).

---

[2] Defendant Swanson was served with an amended summons on January 17, 2014. *See* Process Receipt (Dkt. No. 34).

The motion was subsequently referred to me for preparation of this Report and Recommendation by order dated December 29, 2013 (Dkt. No. 32). After Scretching failed to submit any opposition papers to the motion, I issued an order allowing him a further opportunity to do so by February 18, 2014 (Dkt. No. 33). To date, no opposition has been filed and consequently Defendants' motion will be considered unopposed.

## II.   DISCUSSION

### A. Standard of Review

#### 1. Motion for Judgment on the Pleadings and *Pro Se* Litigants

The standard for evaluating a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as the standard for a motion to dismiss for failure to state a claim under Rule 12(b). *See, e.g., Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).[3] The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Tellabs, Inv. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Generally, a plaintiff need only provide a "short and plain" statement of his claim, not an exposition of his legal argument. *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011); Fed. R. Civ. P. 8(a). Nonetheless, while a plaintiff need not include "'detailed factual allegations,'" he must allege more than mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a

---

[3] "While a Rule 12(b)(6) motion is made prior to the filing of an answer to the claim for which dismissal is sought, a Rule 12(c) motion is made after the relevant pleadings are closed." *Best v. City of New York*, No. 12 Civ. 7874 (RJS) (SN), 2014 WL 163899, at *7 (S.D.N.Y. Jan. 15, 2014) (internal quotation marks and citation omitted). "The difference [between these two types of motions] is, however, merely academic . . . ." *Fisher–Price, Inc. v. Kids II, Inc.*, No. 10 Civ. 0988A(F), 2011 WL 6409665, at *6 (W.D.N.Y. Dec. 21, 2011) (report & recommendation) (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).

4

cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In determining whether a complaint has met this plausibility standard, the Court must consider all evidence contained within the pleadings, in addition to any documents that are attached to the complaint or incorporated in it by reference. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The Court may also consider matters of public record, such as court filings and police records. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

*Pro se* complaints are not excused from stating a plausible claim for relief. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)). It is well accepted, however, that they are subject to a more solicitous review than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also McKeown v. New York State Comm'n on Judicial Conduct*, 377 F. App'x 121, 122 (2d Cir. 2010). The pleadings of a *pro se* party should "be construed liberally 'to raise the strongest arguments [they] suggest[ ],'" *Walker*, 717 F.3d at 124 (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)), and the district court must be careful that dismissal is only made "where a plaintiff has clearly failed to meet minimum pleading requirements." *Kinsey v. Bloomberg*, No. 12 Civ. 8936 (PAE) (JCF), 2014 WL 630670, at *3 (S.D.N.Y. Feb. 18, 2014).

Finally, a litigant's failure to oppose a motion does not by itself merit dismissal of a complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010); *McCall v. Pataki*,

232 F.3d 321, 322-23 (2d Cir. 2000). When presented with an unopposed motion, a court remains obligated to review the pleadings and determine whether there is a sufficient basis for granting the motion. *Goldberg*, 599 F.3d at 183.

### 2. Pleading Requirements for Section 1983

Section 1983 provides that any "person who, under color of any [state] statute, ordinance, regulation, custom, or usage" subjects any other person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. "[T]he purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). A plaintiff seeking such relief must allege that "(1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action, and (2) the action deprived plaintiff of a right secured by the Constitution or federal law." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 425 (S.D.N.Y. 2013) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source.").

While the plausibility standard in a Rule 12 motion applies with equal force to Section 1983 claims, the Second Circuit has emphasized that the rule that a court "draw all reasonable inferences in favor of the non-movant" must be "applied with particular strictness when the plaintiff complains of a civil rights violation." *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (citations omitted). "Thus, a claim for relief under 42 U.S.C.

6

§ 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right." *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 378 (S.D.N.Y. 2007) (quoting *Green v. Maraio*, 722 F.2d 1013, 1016 (2d Cir. 1983)) (alterations and internal quotation marks omitted).

## B. Analysis

### 1. False Arrest and Malicious Prosecution Claims

Scretching alleges that Defendants repeatedly violated his Fourth Amendment rights, specifically during the events of August 23, 2012 as well as during the preceding three-year period. *See* Compl., 4-5. Although the complaint does not so specify, the Court construes Scretching's allegations, which concern instances in which he was taken into police custody, put into lineups, and threatened with criminal proceedings without justification, as raising false arrest and malicious prosecution claims in particular. *See, generally, Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (citation omitted) (describing false arrest action as derived from Fourth Amendment right to be free from unreasonable seizures); *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (outlining Fourth Amendment violation of malicious prosecution) (citations omitted).

#### a. Applicable Law

A Section 1983 claim for false arrest that is alleged to have occurred in New York is "substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). A plaintiff bringing a false arrest claim in New York must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Confinement is deemed privileged if the plaintiff was confined pursuant to a warrant that is facially valid and supported by probable cause. *Albergottie v. New York City*, No. 08 Civ. 8331 (SHS), 2011 WL 519296, at *7 (S.D.N.Y. Feb. 15, 2011) (citing *Weyant*, 101 F.3d at 852).

Similarly, in order to state a Section 1983 claim for malicious prosecution, a plaintiff must "establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Under New York law, which applies here, these elements include: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). If a plaintiff was convicted of the crime for which he was arrested, such a conviction establishes probable cause. *Rivera v. Federlin*, No. 08 Civ. 7293 (PAC) (KNF), 2011 WL 338043, at *1 (S.D.N.Y. Jan 31, 2011) (citing *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986)). The existence of probable cause, in turn, is a complete bar to a claim for malicious prosecution or false arrest. *D'Olimpio v. Cristafi*, 718 F. Supp. 2d 357, 364-65 (S.D.N.Y. 2010) (citing *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) and *Bonide Prods., Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000)).

Moreover, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that, in order to recover for allegedly unconstitutional actions "whose unlawfulness would render a conviction or sentence invalid," a Section 1983 plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's

issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. In other words, under this "favorable termination" rule, Section 1983 claims must fail as a matter of law where "a judgment in favor of the plaintiff would necessarily imply the invalidity" of a conviction that flowed from the allegedly unconstitutional acts. *Id.* at 487; *see also Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006). Thus, where an underlying alleged false arrest or malicious prosecution has led to a conviction, including one entered following a guilty plea, and that conviction remains unchallenged, Fourth Amendment claims are barred. *See, e.g., Younger v. City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution barred by conviction entered on guilty plea); *Flemming v. City of New York*, No. 02 Civ. 4113 (PKC), 2006 WL 1006263, at *3 (S.D.N.Y. Apr. 18, 2006) (guilty plea barred false arrest and malicious prosecution claims because conviction not reversed or otherwise declared invalid). *See also Cameron,* 806 F.2d at 387 ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.") (citation omitted).

### b. August 23, 2012 Arrest

Defendants argue, correctly, that Scretching's claims arising from his August 23, 2012 arrest must fail under the *Heck* favorable termination rule. Def. Mem., at 4-5. Defendants have submitted documentary evidence that Scretching's August 23, 2012 arrest was made in connection with a charge of, among other crimes, robbery in the third degree. *See* Horton Decl., Ex. B (Criminal Court Complaint). A Certificate of Disposition provided by Defendants indicates that Scretching was convicted of this third-degree robbery charge on April 26, 2013 in a New York court, following entry of a guilty plea. *See* Horton Decl., Ex. C (Certificate of

Disposition).  Scretching has offered no information that he has challenged this conviction. *Heck* therefore precludes the claims arising out of his August 23 arrest. *See Flemming*, 2006 WL 1006263, at *3.

In addition, the existence of the conviction underscores critical substantive deficiencies in Scretching's pleadings with regard to the events of August 23.  First, because Scretching's conviction remains undisturbed, he cannot establish that the criminal proceedings were terminated in his favor, an essential element of a malicious prosecution claim.  *See Droz*, 580 F.3d at 109.  Second, the conviction necessarily demonstrates the existence of probable cause, which is similarly fatal to both false arrest and malicious prosecution claims.  *See McLaurin v. New Rochelle Police Officers*, 439 F. App'x 38, 39 (2d Cir. 2011) ("conviction established probable cause for the arrest as a matter of law") (citing *Cameron*, 806 F.2d at 388-89); *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("conviction establishes the existence of probable cause, which is a complete defense to a malicious prosecution claim").  Accordingly, Scretching's claims arising out of the August 23, 2012 arrest should be dismissed.

### c. Pre-August 23, 2012 Claims

Scretching's generalized allegations about Fourth Amendment violations in the period preceding August 2012, which Defendants do not address in their motion, also fail to meet minimum pleading standards.  As currently pleaded, Scretching's assertion about "numerous occasions" where his Fourth Amendment rights were violated "over a stretch of almost [three] years" is devoid of even minimal factual content, and is thus insufficient on its face. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The only details Scretching does provide – describing how three months before August 2012 he was put into three separate lineups by the four named detectives, the occurrence of which was "voided" in the precinct computer – fall short of demonstrating a plausible claim to relief under the Fourth Amendment. Scretching provides nothing in his complaint about the circumstances behind being placed in these lineups, aside from the fact that it occurred three times, to demonstrate that they were improper and unconstitutional. Most crucially, the complaint does not assert in even a cursory manner that the lineups were carried out without probable cause, a necessary allegation without which claims for false arrest or malicious prosecution must fail. *See Droz*, 580 F.3d at 109; *Weyant*, 101 F.3d at 852; *Singer*, 63 F.3d at 118. Therefore, although Scretching alleges that he has been unfairly targeted or otherwise mistreated, his Fourth Amendment claims from the period before August 23, 2012, as currently articulated, should be dismissed.

### 2. Excessive Force Claim

Scretching's complaint also alleges: "I was beaten by [the four Defendant] detectives. I have scars on my back to prove it!!" Compl., ¶ 3. Defendants move to dismiss on the grounds that Scretching's brief assertion, which the Court construes as an excessive force claim, fails to state a basis for relief. The Court agrees.

"A claim that excessive force was used in the course of an arrest, investigatory stop or other 'seizure' of a free citizen is most properly characterized as invoking the protections of the Fourth Amendment." *Wims v. New York City Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 387 (1989)) (alterations and internal quotation marks omitted). It is the plaintiff's burden to establish that the use of force by a police officer was "objectively unreasonable in light of the facts and

11

circumstances" prompting the force, "without regard to [the officer's] underlying intent or motivation." *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005) (citation omitted). Here, Scretching fails to provide *any* facts from which the Court may determine whether he states a cognizable claim. In a single sentence, Scretching asserts that the detectives beat him and left him scarred, but does not elucidate when, where, or under what circumstances the incident (or incidents) arose. Lacking such additional facts to support his allegations, or to demonstrate that the force used was objectively unreasonable, Scretching's excessive force claim should be dismissed. *See, e.g., Murray v. Johnson No. 260*, 367 F. App'x 196, 198 (2d Cir. 2010) ("limited and conclusory" allegation of excessive force devoid of factual content dismissed as "mere speculation or conjecture") (citation omitted); *Lyman v. City of Albany*, 536 F. Supp. 2d 242, 249 (N.D.N.Y. 2008) (barebones allegation that "excessive force was used," without more specificity and detail, not cognizable).

### 3. Municipal Liability

In addition to the four detectives, Scretching seeks to hold the City of New York liable for the alleged constitutional violations, but he has not met the standard for establishing municipal liability as laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). In order to succeed on a municipal liability claim, a plaintiff must establish more than the mere fact that an individual defendant was employed by the municipality. *Id.* at 691. "Rather, the plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries. . . . Second, the plaintiff must establish a casual connection — an 'affirmative link' — between the policy and deprivation of his constitutional rights." *Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011)

(quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). However, the only mention in the complaint of any role by a municipal entity comes from Scretching's assertion that the NYPD Internal Affairs Department had been investigating the 43rd Precinct for the "practices" Scretching alleges he endured. Compl., at 6. Even broadly reading this isolated detail as a bare allegation of the existence of a municipal policy or custom, it amounts to no more than a boilerplate recitation of the first *Monell* element and, absent further facts, must fail. *See, e.g., Plair*, 789 F. Supp. 2d at 469-70 (dismissing boilerplate complaint reciting *Monell* elements but lacking sufficient factual details); *In re Dayton*, 786 F. Supp. 2d 809, 822-23 (S.D.N.Y. 2011) (same).

Moreover, a plaintiff cannot prevail on a municipal liability claim "without a finding of a constitutional violation by the persons supervised." *Williams v. City of New York*, No. 02 Civ. 3693 (CBM), 2003 WL 22434151, at *9 (S.D.N.Y. Oct. 23, 2003) (citation omitted). *See also Hartline v. Gallo*, 546 F.3d 95, 99-100 (2d Cir. 2008) (violation of plaintiff's constitutional rights is prerequisite to *Monell* claim); *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) ("A municipality cannot be liable for inadequate training or supervision when the officers involved in the arrest did not violate the plaintiff's constitutional rights."). For the reasons already discussed, Scretching's complaint has failed to plead claims of constitutional violations against the four individual detectives, precluding any possibility of a successful claim against the City of New York. Therefore, Scretching's claims against the City of New York should be dismissed.

## C. Leave to Amend

While the Court recommends that Scretching's claims as currently pleaded be dismissed, the question remains as to whether he should be afforded leave to amend his complaint to

address the deficiencies described. Leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Nonetheless, leave should be denied in the presence of factors such as "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

Although Scretching has not sought permission to amend (indeed, he has not responded at all to the current motion), the Court nonetheless recommends that he should be given leave to do so. *See, e.g., Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) ("[T]he court, on its own initiative, may require the parties to amend to avoid dismissal.") (citation omitted). "A *pro se* complaint is to be read liberally" and "the court should not dismiss without granting leave to amend *at least once* when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (emphasis added) (citations omitted). By virtue of his conviction following the August 23, 2012 arrest, Scretching's claims related to that incident appear to be conclusively barred. However, the Court cannot conclude that, based on a liberal reading of his current complaint, Scretching would be unable to articulate a valid claim as to his excessive force and pre-August 23, 2012 allegations if given the opportunity to expand on his undeveloped pleadings.

Leave to amend is further supported by the fact that Scretching has not yet been given such an opportunity. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once

14

when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) (alterations and internal quotation marks omitted). Furthermore, while leave to amend should be denied where re-pleaded claims would be time-barred, *see Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995), Scretching's new pleadings would not necessarily be futile in this regard. Section 1983 claims raised in New York are governed by a three-year statute of limitations. *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997). Thus, more fully developed pleadings concerning the circumstances leading to the earlier lineups, identified by Scretching as taking place three months prior to August 2012, could articulate a claim falling within the actionable period, as might more developed facts surrounding the alleged beating and its timing. *Compare Berry v. Vill. of Millbrook*, No. 09 Civ. 4234 (KMK), 2010 WL 3932289, at *4 (S.D.N.Y. Sept. 29, 2010) (leave to amend granted where Section 1983 statute of limitations has not yet run) *with Farbstein v. Hicksville Pub. Library*, 323 F. Supp. 2d 414, 422 (E.D.N.Y. 2004) (leave to amend denied where court cannot ascertain if any alleged illegal acts occurred within three-year Section 1983 claims period).

Finally, although he was somewhat dilatory in serving Defendants and has not responded to the current motion, the Court does not attribute bad faith to Scretching, a *pro se* plaintiff, as a result, nor does it identify other factors that would counsel against an opportunity to amend the complaint. *See Alexandre v. Town of Hempstead*, 275 F.R.D. 94, 97 (E.D.N.Y. 2011) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("The solicitude afforded to *pro se* litigants . . . embraces relaxation of the limitations on the amendment of pleadings.").

In light of the foregoing, I recommend that Scretching be granted leave to amend his complaint within 30 days of the Court's decision, to provide whatever additional facts that may exist to support claims arising in the period before the August 23, 2012 arrest as well as the excessive force claim.

### III. CONCLUSION

For the foregoing reasons, I recommend that Defendants' motion for judgment on the pleadings be granted but that Scretching be given permission to amend his complaint as to his pre-August 23, 2012 and excessive force claims within 30 days of an order adopting this Report and Recommendation.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer, United States Courthouse, 40 Foley Square, New York, New York 10007, and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Engelmayer.

FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010). If Scretching does not have access to cases cited herein that are reported on

Westlaw, he should request copies from Defendant. *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
       May 6, 2014

_____
JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been mailed to:**

Terrence Scretching
13-A-2687
Mid-State Correctional Facility
P.O. 2500
Marcy, NY 13403